# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **DONALD FRANCIS DINEEN**<br>    **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | |
| | ) | |
| **EXPERIAN INFORMATION** | ) | **Jury Trial Demanded** |
| **SOLUTIONS, INC. and EQUIFAX** | ) | |
| **INFORMATION SOLUTIONS LLC, and** | ) | **COMPLAINT** |
| **CAPITAL ONE BANK (USA), N.A.** | ) | |
|     **Defendants.** | ) | |

## PRELIMINARY STATEMENT

1.      Defendants, Experian Information Solutions, Inc. and Equifax Information Services LLC, national consumer reporting agencies ("CRA"), have been selling credit reports inaccurately marking Plaintiff as deceased.  When they inaccurately report a living consumer as deceased CRAs make it practically impossible for that consumer to access credit, as they did with Mr. Dineen.  Their practice also harms the businesses that purchase their reports; as such companies cannot process credit applications due to the applicant's lack of a credit score. There is no good faith rationale to explain CRAs' practice other than the generation of revenue. If CRAs' actually believed that Mr. Dineen was deceased, they had no legally permissible basis to sell his reports.  If Defendants believed Mr. Dineen was alive, they knowingly sold his reports with a gross inaccuracy.  Moreover, Defendants know that identity thieves use the credit information of truly deceased persons to commit credit fraud.  Defendants thus violated Plaintiff's rights under the Fair Credit Reporting Act ("FCRA"), as set forth below.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §1331.

2.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

3.      Plaintiff Donald Francis Dineen is an individual who resides in Carver, Massachusetts.

4.      Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that regularly conducts business in the Commonwealth of Massachusetts and which has its headquarters and a principal place of business located at 475 Anton Boulevard, Costa Mesa, California and a usual place of business at 125 Summer Street, Suite 1910, Boston, Massachusetts.

5.      Defendant Equifax Information Services LLC, ("Equifax") is a consumer reporting agency that regularly conducts business in the Commonwealth of Massachusetts and which has its headquarters and a principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA and a usual place of business at 200 Unicorn Park Drive, Woburn, Massachusetts.

6.      Defendant Capital One Bank (USA), National Association, ("Cap One") is a business entity and furnisher of credit information that regularly conducts business in the Commonwealth of Massachusetts and which has its headquarters and a principal place of business located at 1680 Capital One Drive, Mclean VA.

## FACTUAL ALLEGATIONS
### *Experian and Equifax's Practices Concerning the Sale of Reports on the "Deceased"*

7.     Defendants Experian and Equifax are regulated as "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C. § 1681a(e).

8.     Experian and Equifax sell millions of consumer reports (often called "credit reports" or "reports") per day, and Defendants also sell credit scores.  15 U.S.C. § 1681a(e).

9.     Pursuant to the FCRA, Experian and Equifax must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."  15 U.S.C. § 1681e(b).

10.     Pursuant to the FCRA, Experian and Equifax must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes."  15 U.S.C. §§ 1681e(a) & 1681b.

11.     Experian and Equifax place a "deceased" notation or marking on reports when they are advised from any of their many data furnishing sources that a given consumer is deceased.

12.     The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

13.     Experian and Equifax do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

14.     Experian and Equifax do not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

15.     Experian and Equifax do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

16.     A deceased notation is a very unusual marking upon a credit file or credit report.

17.     In some cases, in order to assure accuracy, Experian and Equifax send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their consumer credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado.  But Experian and Equifax have no similar procedure to notify the consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" deceased code is furnished to Experian and Equifax to be placed in said consumer's credit file or report.

18.     Experian and Equifax regularly receive the "Death Master File" from the Social Security Administration listing by social security number those consumers that the government believes to be deceased.   But Experian and Equifax do not cross-reference the "X" code received from furnishers with the Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

19.     Defendants will only use the Death Master File to sell additional products for an additional fee which are designed to show whether a given consumer is truly deceased.

20.     Indeed, Experian and Equifax employ no procedures *at all* which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

21.     Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Experian and Equifax employ no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

22.     Even in instances where the purportedly deceased consumer communicates directly with Experian and Equifax, Experian and Equifax employ no procedures which assures that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

23.     Once a "deceased" mark is placed upon a consumer's report, Experian and Equifax will not calculate and will not provide a credit score for that consumer.

24.     Nevertheless, Experian and Equifax routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

25.     Upon Experian and Equifax's reports with a "deceased" mark sold to third parties Experian and Equifax never calculate or provide a credit score for that consumer.

26.     Experian and Equifax know that third-party credit issuers use a credit score in order to process a given credit application.

27.     Experian and Equifax know that many third-party credit issuers require a credit score in order to process a given credit application.

28.     Experian and Equifax know that consumers without credit scores are unable to secure any credit from most credit issuers.

29.     Experian and Equifax know that living consumers are turned down for credit specifically because Experian and Equifax are reporting them as "deceased" and without a credit score.

30.     Experian and Equifax have been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendants are reporting them as "deceased" and without a credit score.

31.     Experian and Equifax have received and documented thousands of disputes from consumers complaining that their credit report had them erroneously marked as "deceased."

32.     Experian and Equifax know that thousands of consumers are erroneously marked as "deceased" on their credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are, in fact, alive.

33.     Nevertheless, Defendants employ no procedures which assure that a consumer marked as "deceased" on one of Experian and Equifax's reports is, in fact, deceased.

34.     Even consumers who dispute the erroneous "deceased" status on their credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

35.     Experian and Equifax have no independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

36.   Nor do Experian and Equifax employ any procedures to limit or stop the furnishing of reports to third parties for consumers which they have marked as "deceased" under any circumstances.

37.   For years after a consumer's actual death, Experian and Equifax will continue to sell credit reports about that consumer.

38.   Experian and Equifax will only remove a deceased consumer's file from their credit reporting database when they are no longer valuable to Experian and Equifax – meaning that nobody is continuing to buy those reports from Experian and Equifax.

39.   Experian and Equifax charge third-parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as they would for any other report.

40.   Experian and Equifax profit from the sale of reports on the deceased.

41.   Experian and Equifax have in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

42.   Experian and Equifax know that truly deceased consumers do not apply for credit.

43.   Experian and Equifax know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud.  Indeed, identity theft using the personal identifying information of deceased consumers is known to Experian and Equifax to be a common and major source of identity theft.

44.   Experian and Equifax know that identity theft and credit fraud are serious and widespread problems in our society.

45.    Experian and Equifax warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased, and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

46.    Experian and Equifax have no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

47.    Indeed, Experian and Equifax sell reports on the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

48.    For consumers who are deceased, there exists no permissible purpose under the FCRA for Experian and Equifax to ever sell their credit reports, absent a court order.

49.    Experian and Equifax know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

### *Case Specific Facts*

50.    For a period of time since at least April 2017, Plaintiff had been marked by Defendants as "deceased" on his Experian and Equifax credit reports.

51.    Plaintiff is not deceased.

52.    Experian and Equifax did not calculate or provide any credit score for or on Plaintiff, even though they sold reports about him to third parties marking him as "deceased."

53.     Plaintiff has disputed the inaccurate information with Equifax from April 2017 through the present.

54.     Notwithstanding Plaintiff's efforts, Equifax has sent Plaintiff correspondence indicating its intent to continue publishing the inaccurate information and Defendant continues to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.  Defendant has repeatedly published and disseminated consumer reports to such third parties from at least April 2017 through the present.

55.     Despite Plaintiff's efforts, Equifax has never:  (1) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's disputes; (2) contacted all third parties that would have relevant information concerning Plaintiff's disputes; (3) forwarded any relevant information concerning Plaintiff's disputes to the entities originally furnishing the inaccurate information; and (4) requested or obtained any credit applications, or other relevant documents from the entities furnishing the inaccurate information.

56.     Notwithstanding Plaintiff's disputes, Cap One, furnisher of the inaccurate information, has also failed to conduct timely and reasonable investigations of Plaintiff's disputes after being contacted by the relevant credit reporting agencies concerning Plaintiff's disputes, has willfully continued to report such inaccurate information to various credit reporting agencies, and has failed to mark the above accounts as disputed.

57.     As a result, Defendants made it practically impossible for Plaintiff to obtain credit.

58.     As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of credit denial or loss of credit opportunity, credit defamation and emotional distress, including anxiety, frustration, embarrassment and, humiliation.

59.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

60.     At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## COUNT I – VIOLATIONS OF THE FCRA
### (Plaintiff v. Experian)

61.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein. Experian was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

62.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

63.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

64.     Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Experian is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681e(b).

65.     The conduct of Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Experian is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT II –VIOLATIONS OF THE FCRA
### (Plaintiff v. Equifax)

66.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.  Equifax was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

67.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

68.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

69.     Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681e(b) and 1681i.

70.     The conduct of Equifax is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Equifax is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT III –VIOLATIONS OF THE FCRA
### (Plaintiff v. Cap One)

71.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

72.     At all times pertinent hereto Cap One was a "person" as that term defined by 15 U.S.C. § 1681a(b).

73.    At all times pertinent hereto Cap One was a "furnisher" as that term is used in 15 U.S.C. § 1681s-2(b).

74.    Cap One violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

75.    Cap One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result Cap One is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

## JURY TRIAL DEMAND

76.    Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

(a)    Actual damages;

(b)    Statutory damages;

(c)    Punitive damages;

(d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

(e)    Such other and further relief as may be necessary, just and proper.

Respectfully Submitted,


*/s/ Christopher M. Lefebvre, Esq.*
The Consumer & Family Law Center of
Claude F. Lefebvre | Christopher M. Lefebvre PC
PO Box 479 • Pawtucket • RI •02862
Tel: (401) 728-6060 • Fax: (401) 728-6534
chris@lefebvrelaw.com
BBO: 629056


Dated:  June 20, 2017                    ***Attorney for Plaintiff***